IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13-cv-01287-MSK-MJW

JOHN DOE,
JANE DOE,
Y.C., by her parents and next friends,
E.C., by her parents and next friends,
E.S.C., by his parents and next friends, and
J.C., by his parents and next friends,

Plaintiffs,

v.

JOANNA MCAFEE, El Paso County Department of Human Services intake caseworker,
individually, and as an agent, employee, and representative of El Paso County,
KATHY TREMAINE, El Paso County Department of Human Services caseworker,
individually, and as an agent, employee, and representative of El Paso County,
PATSY HOOVER, El Paso County Department of Human Services supervisor,
individually, and as an agent, employee, and representative of El Paso County,
LISA LITTLE, supervisor of the day, El Paso County Department of Human
Services supervisor, individually, and as an agent, employee, and representative of El
Paso County,
RICHARD BENGTSSON, Executive Director, El Paso County Department of Human
Services, individually, and as an agent, employee, and representative of El Paso
County,
JEFF GREENE, County Administrator over El Paso County Department of Human
Services, individually, and as an agent, employee, and representative of El Paso
County,
JOEY HARRIS, Deputy, El Paso County Sheriff's Office, individually, and as an agent,
employee, and representative of El Paso County,
JON PRICE, Deputy, El Paso County Sheriff's Office, individually, and as an agent,
employee, and representative of El Paso County,
BENJAMIN DEARMONT, Supervisor, El Paso County Sheriff's Office, individually, and
as an agent, employee, and representative of El Paso County,
MITCHELL MIHALKO, Deputy, El Paso County Sheriff's Office, individually, and as an
agent, employee, and representative of El Paso County,
CHAD HAYNES, Investigator, 4th Judicial District Attorney's Office, individually, and as
an agent employee, and representative of the 4th Judicial District Attorney's Office,
RANDY STEVENSON, Deputy Chief Investigator, 4th Judicial District Attorney's Office,
individually, and as an agent, employee, and representative of the 4th Judicial District
Attorney's Office,
TERRY MAKETA, Sheriff of El Paso County, as an agent, employ, and representative
of El Paso County,

2

EL PASO COUNTY BOARD OF COUNTY COMMISSIONERS,
JONATHAN HUDSON, Officer, Monument Police Department, individually, and
ANDREW ROMANO, Officer, Monument Police Department, individually,

Defendants.

---

### RECOMMENDATION ON
### MOTION TO DISMISS THIRD AMENDED COMPLAINT (Docket No. 52)
### and
### COUNTY DEFENDANTS' MOTION TO DISMISS THE THIRD AMENDED
### COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(1) AND 12(b)(6)
### (Docket No. 59)

---

**MICHAEL J. WATANABE**
**United States Magistrate Judge**

This case is before this court pursuant to an Order Referring Case (Docket No. 9)

issued by Chief Judge Marcia S. Krieger on May 22, 2013.

## FACTUAL BACKGROUND

Plaintiffs make the following allegations in their Third Amended Complaint

(Docket No. 45) (hereinafter "Complaint"). This matter involves a family consisting of

parents John and Jane Doe ("Parents"), and four children, Y.C., E.C., E.S.C., and J.C.[1]

On April 17, 2012, Parents discovered that their fifteen-year-old daughter, Y.C., had a

secret sexual partner. In addition, Parents discovered that Y.C. had been breaking

various school rules. Consequently, on two separate occasions that evening, "Parents

separately gave Y.C. a spanking that consisted of 20 swats on the [buttocks] with a light

rod."

---

[1] On June 12, 2013, Chief Judge Krieger entered an Order (Docket No. 18) granting in part and denying in part plaintiffs' Motion for Leave to Restrict (Docket No. 17). Given the nature of this case, Chief Judge Krieger found that it was appropriate for plaintiffs to proceed in the matter under pseudonyms. The parents are identified as John and Jane Doe, and the minors are identified by their initials.

3

On April 19, 2012, the Department of Human Services ("DHS") sent caseworker Joanna McAfee to investigate an anonymous allegation of child abuse against Y.C. Sometime after McAfee arrived, Y.C. acknowledged that there were marks on her buttocks. McAfee instructed Y.C. to "strip" so that McAfee could inspect and photograph Y.C.'s naked buttocks. Y.C. refused to undress. McAfee informed Y.C. and Jane Doe that if Y.C. would not cooperate, McAfee would be forced to call law enforcement. Y.C. replied, "Do what you have to do." McAfee contacted the El Paso County Sheriff's dispatch and requested assistance.

Shortly thereafter, Officers Andrew Romano and Jonathan Hudson of the Monument Police Department arrived. While Romano and Hudson did not intervene in the attempted strip search, they did try to convince John Doe to order Y.C. to strip. In the meantime, Jane Doe and Y.C. "left the premises unannounced and drove to Kansas." Two El Paso County Sheriff's deputies, Jon Price and Joey Harris, also arrived at the home. Like the Monument officers, Price and Harris tried to convince John Doe to compel Y.C. to strip, but did not otherwise intervene. Despite these efforts, John Doe refused to compel Y.C. to undress.

At some point, McAfee threatened that she would take custody of Y.C. if John Doe failed to cooperate. McAfee also privately told Harris and Price that she intended to take custody of all four children if John Doe did not cooperate. At approximately 2:45 p.m., John Doe asked Harris if he was free to leave. John Doe was told he could leave, which he did shortly thereafter.

In the meantime, McAfee contacted her supervisors/team and "unspecified county attorneys." McAfee also contacted a judge and asked for a verbal order for DHS

to take custody of all four children.  McAfee then made her way to school to talk to the other three children.

At the school, McAfee met with the three children in an empty office.  Shortly thereafter, McAfee received a verbal order from the judge she had contacted, and wrote up a temporary custody order for all four children.  The three children were told that they would be taken to DHS for questioning.  The children were handed over to another case worker, Kathy Tremaine, who escorted them out of the school towards her vehicle.  However, before they reached Tremaine's car, John Doe pulled up in his vehicle and called for the children to get in.  The children broke away from Tremaine and piled into the back seat of John Doe's car.  John Doe headed south, eventually making his way to the children's grandparents' home in North Carolina.

 The next morning, county attorneys got an order for a physical examination of Y.C.  The order was faxed to Jane Doe's family attorney in North Carolina.  When Jane Doe learned of the physical examination order and custody order on Y.C., she and Y.C. made their way back to Colorado.

At some point after Jane Doe and Y.C. entered Colorado, the Colorado State Patrol executed a felony stop on Jane Doe's car.  Both Jane Doe and Y.C. were handcuffed and placed in the back of a parol vehicle.  Jane Doe was eventually released, while Y.C. was taken to Memorial Hospital for her physical examination.  Y.C. consented to having her buttocks viewed and photographed.

Meanwhile, in North Carolina, John Doe left the three younger children in their grandparents' care and made his way back to Colorado.  DHS notified the Department of Social Services in North Carolina of the custody order and asked that they take

custody of the children.  Eventually the children were brought back to Colorado by

McAfee and another case worker.  DHS filed a dependency and neglect petition on all

four children.  The petition was later withdrawn when an "informal adjustment" was

negotiated on or around July 10, 2012.  Parents received legal custody under protective

supervision on July 26, 2012.  The dependency and neglect case was then vacated.

In addition to the dependency and neglect case, misdemeanor child abuse

charges were filed against John and Jane Doe.  Parents were arrested and booked on

April 26, 2012.  Furthermore, on August 14, 2012, three felony charges for second

degree kidnaping, and three felony charges for violation of a custody order were filed

against John Doe.  John Doe was arrested and booked on those charges.  Eventually

John Doe plead guilty to the misdemeanor child abuse charge in exchange for the other

charges against him being dropped.  Jane Doe was given a deferred prosecution.  John

Doe spent two months in jail.

Plaintiffs make twelve claims for relief in their Third Amended Complaint (Docket

No. 45): (1) violation of Y.C.'s Fourth Amendment right to be free of unreasonable

searches and Fourteenth Amendment right to be free of unconstitutional coercive

behavior; (2) violation of Y.C.'s Fourth and Fourteenth Amendment rights to privacy; (3)

violation of Y.C.'s Fourth Amendment right to be free of unreasonable seizures; (4)

violation of John Doe's First Amendment rights; (5) violation of Jane Doe's First

Amendment rights; (6) violation of Jane Doe's Fourth Amendment search and seizure

rights; (7) violation of John and Jane Doe's Fourth Amendment and

substantive/procedural Fourteenth Amendment liberty interests and constitutional rights

to privacy; (8) violation of E.C., E.S.C., and J.C.'s Fourth Amendment and

substantive/procedural Fourteenth Amendment liberty interests and constitutional rights to privacy; (9) violation of E.C., E.S.C., and J.C.'s Fourth Amendment right to be free of unreasonable seizures; (10) violation of plaintiffs' rights under the Fourth and Fourteenth Amendment constitutional liberty interests, to be free from unreasonable searches and seizures, and to privacy, and of their First Amendment right to free speech, pursuant to governmental customs, policies, or decisions; (11) failure to train or supervise as to rights under the First, Fourth, and Fourteenth Amendments; and (12) retaliatory prosecution against John Doe for asserting his constitutional rights.

## PENDING MOTIONS

Now before the court for a report and recommendation is the Motion to Dismiss Third Amended Complaint (Docket No. 52) filed by Jonathon Hudson and Andrew Romano (the "Monument Defendants") and the County Defendants' Motion to Dismiss Third Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) (Docket No. 59). The court has carefully considered the Third Amended Complaint (Docket No. 45), the subject motions (Docket Nos. 52 & 59), the County Defendants' brief in support of their motion to dismiss (Docket No. 60), plaintiffs' responses (Docket Nos. 62, 63, & 64), and defendants' replies (Docket Nos. 69 & 70). In addition, the court has taken judicial notice of the court's file, and has considered the applicable Federal Rules of Civil Procedure and case law. The court now being fully informed makes the following findings of fact, conclusions of law, and recommendations.

Under Rule 12(b)(1), a court may dismiss a complaint for "lack of jurisdiction over the subject matter." Fed. R. Civ. P. 12(b)(1). The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction. See Basso v. Utah Power & Light Co.,

7

495 F.2d 906, 909 (10th Cir. 1974).  Motions to dismiss pursuant to Rule 12(b)(1) take

two forms.  First, a party may attack the facial sufficiency of the complaint, in which case

the court must accept the allegations of the complaint as true.  Holt v. United States, 46

F.3d 1000, 1002-03 (10th Cir. 1995).  Second, if a party attacks the factual assertions

regarding subject matter jurisdiction through affidavits and other documents, the court

may make its own findings of fact.  See id. at 1003.  A court's consideration of evidence

outside the pleadings will not convert the motion to dismiss to a motion for summary

judgment under Rule 56.  See id.

Under Rule 8(a)(2), a pleading must contain "a short and plain statement of the

claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  A motion to

dismiss pursuant to Rule 12(b)(6) alleges that the complaint fails "to state a claim upon

which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  A complaint must be dismissed

pursuant to Fed. R. Civ. P. 12(b)(6) if it does not plead "enough facts to state a claim to

relief that is plausible on its face."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570

(2007)).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not

need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of

his 'entitlement to relief' requires more than labels and conclusions, and a formulaic

recitation of the elements of a cause of action will not do . . . ."  Id. at 555 (citations

omitted).  "Factual allegations must be enough to raise a right to relief above the

speculative level."  Id.  "[A] plaintiff must 'nudge [] [his] claims across the line from

conceivable to plausible' in order to survive a motion to dismiss. . . .  Thus, the mere

metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of

the pleaded claims is insufficient; the complaint must give the court reason to believe

8

that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting Twombly, 550 U.S. at 570).

The Tenth Circuit Court of Appeals has held "that plausibility refers 'to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" Khalik v. United Air Lines, 671 F.3d 1188, 1191 (10th Cir. 2012). The court has further "noted that '[t]he nature and specificity of the allegations required to state a plausible claim will vary based on context.'" Id. The court thus "concluded the *Twombly/Iqbal* standard is 'a middle ground between heightened fact pleading, which is expressly rejected, and allowing complaints that are no more than labels and conclusions or a formulaic recitation of the elements of a cause of action, which the Court stated will not do.'" Id.

For purposes of a motion to dismiss pursuant to Rule 12(b)(6), the court must accept all well-pled factual allegations in the complaint as true and resolve all reasonable inferences in the plaintiff's favor. Morse v. Regents of the Univ. of Colo., 154 F.3d 1124, 1126-27 (10th Cir. 1998); Seamons v. Snow, 84 F.3d 1226, 1231-32 (10th Cir. 1996). However, "when legal conclusions are involved in the complaint 'the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to [those] conclusions' . . . ." Khalik, 671 F.3d at 1190 (quoting Ashcroft v. Iqbal, 556 U.S. 662 (2009)). "Accordingly, in examining a complaint under Rule 12(b)(6), [the court] will disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable." Id.

## ANALYSIS

There is significant overlap in the subject motions (Docket Nos. 52 & 59).
Accordingly, the court will address each of plaintiffs' claims in turn and discuss the
arguments put forth in the subject motions when appropriate.

## I. Claim One

Claim One asserts violation of Y.C.'s Fourth Amendment right to be free of
unreasonable searches and Fourteenth Amendment right to be free of unconstitutional
coercive behavior.  Claim One is made against Defendants Joanna McAfee, Patsy
Hoover, Lisa Little (Supervisor of the Day), Benjamin Dearmont, Joey Harris, Jon Price,
Jonathan Hudson, and Andrew Romano.

The Fourth Amendment portion of plaintiffs' Claim One arises "from DHS
personnel's demand to physically examine Y.C.'s private areas."  Docket No. 45, at 28.
Plaintiffs allege that "Y.C. faced an attempted unreasonable search of her person when
a government agent, Ms. McAfee, demanded that [Y.C.] expose her private parts for
viewing and photography."  Docket No. 45, at 29.

Furthermore, plaintiffs allege that "[c]oercive behavior related to the Fourth
Amendment is also a substantive due process violation under the Fourteenth
Amendment."  Docket No. 45, at 29.  The coercive behavior alleged by plaintiffs is the
various officers' attempts to "coerce father to order [Y.C.] to consent," and also
McAfee's "threats to parents that a child will be taken into custody."  Docket No. 45, at
29-30.

The Fourth Amendment provides that "[t]he right of the people to be secure in
their persons, houses, papers, and effects, against unreasonable searches and

10

seizures, shall not be violated . . . ."  U.S. Const. amend. IV.  Thus, "[t]he touchstone of the Fourth Amendment is reasonableness."  <u>United States v. Knights</u>, 534 U.S. 112, 118 (2001).

Defendants point out that Y.C. was never actually subjected to a search by anyone during the initial encounter at Parents' home.  Furthermore, any attempts to coerce Y.C. or either of her parents was unsuccessful as neither parent ultimately ordered Y.C. to submit to a search and Y.C. never consented on her own.  Defendants argue that an *attempted or threatened* search and/or coercion, without the search actually taking place, is insufficient to support a Fourth Amendment or Fourteenth Amendment claim.

Courts have routinely held, under circumstances such as these, that a demand, threat, or an attempt to coerce cannot form the basis for a valid claim if an actual constitutional violation does not result.  <u>See</u> <u>Jackson v. City of Overland Park, Kan.</u>, No. 11-2527-CM-DJM, 2012 WL 1231848, at *5 (D. Kan. April 11, 2012) (collecting cases and noting that "a threat constitutes an actionable constitutional violation only if the threat exerts coercive pressure on plaintiff *and plaintiff suffers the deprivation of a constitutional right*" (quoting <u>Suasnavas v. Stover</u>, 196 Fed. Appx. 647, 657 (10th Cir. 2006) (emphasis added))); <u>Patrick v. U.S.</u>, 99 F.3d 1139, at *2 (6th Cir. 1996) (finding that an attempt to enter home did not rise to the level of a constitutional violation); <u>5 Borough Pawn, LLC v. City of New York</u>, 640 F. Supp. 2d 268, 287 (S.D.N.Y. 2009) (finding that a demand to search a safe when no search took place means "Fourth Amendment rights could not possibly have been violated"); <u>Cotz Mastroeni</u>, 476 F. Supp. 2d 332, 362 (S.D.N.Y. 2007) (finding that a police officer's mere threat to conduct

an alleged unconstitutional strip search did not violate the plaintiff's constitutional rights).

Because all of the alleged violations in Claim One are threats, attempts, demands, failures to intervene, or attempts to coerce involving a search which never took place, the court finds that plaintiffs' Claim One does not rise to the level of a constitutional deprivation. Accordingly, the court finds that Claim One should be dismissed for failure to state a claim.

## II. Claim Two

Claim Two asserts violation of Y.C.'s Fourth and Fourteenth Amendment rights to privacy as the result of the attempted search. Claim Two is made against Defendants Joanna McAfee, Patsy Hoover, Lisa Little (Supervisor of the Day), Benjamin Dearmont, Joey Harris, Jon Price, Jonathan Hudson, and Andrew Romano.

For the same reasons as outlined in the previous section, the court finds that plaintiffs' Claim Two does not rise to the level of a constitutional deprivation. Claim Two rests squarely on the attempted search of Y.C., a search which ultimately never took place. Just as a Fourth/Fourteenth Amendment unreasonable search claim requires an actual search to have taken place, so does a Fourth/Fourteenth Amendment invasion of bodily integrity privacy claim which is premised on a search. Accordingly, the court finds that Claim Two should be dismissed for failure to state a claim.

## III. Claim Three

Claim Three asserts violation of Y.C.'s Fourth Amendment rights to be free from unreasonable seizures. Claim Three is made against Defendants Joanna McAfee, Patsy Hoover, Lisa Little (Supervisor of the Day), Benjamin Dearmont, Joey Harris, and

12

Jon Price.

Plaintiffs allege that the seizure of Y.C., which took place after Jane Doe and Y.C. were stopped in their car after they reentered Colorado, was unconstitutional. Docket No. 45, at 33-34.  Specifically, plaintiffs allege that the custody orders obtained by McAfee were obtained through "reckless omissions and misstatements" made to the judge.  Docket No. 45, at 32.  Plaintiffs further allege that the custody orders were "not reasonable, justified in its inception, or reasonably related to the scope and nature of Y.C.'s injuries."  Docket No. 45, at 33.  As such, plaintiffs allege there was no probable cause to execute the felony stop of Jane Doe and Y.C.  Docket No. 45, at 33.

The Fourth Amendment, which prohibits the unreasonable seizure of persons, is applicable to the actions of state social workers.  Jones v. Hunt, 410 F.3d 1221, 1225 (10th Cir. 2005).  "With limited exceptions, a search or seizure requires either a warrant or probable cause."  Id. at 1227.  In the context of a seizure for child protection, a juvenile court order often serves the function of a warrant.  See J.B. v. Washington County, 127 F.3d 919, 930 (10th Cir. 1997).

Here, plaintiffs do not allege that Y.C. and the three younger children were taken into custody without a court order.  Rather, plaintiffs allege that the custody orders themselves were issued without probable cause due to omissions and misstatements made to the issuing judge.  Plaintiffs make no claims against the Colorado State Patrol officers who physically executed the felony stop and seized Y.C.  Instead, plaintiffs' claims are directed at the individuals involved in obtaining the custody orders, or in the case of the officers, those who failed to intervene in the other's efforts.

A Fourth Amendment unreasonable seizure claim, based on the falsification or

omission of evidence in obtaining the arrest warrant, is a recognized claim in the Tenth

Circuit.  See Cook v. Hill, 169 Fed. Appx. 513, 516-17 (10th Cir. 2006) (citing Pierce v.

Gilchrist, 359 F.3d 1279 (10th Cir. 2004)).  Such claims are analyzed under the

probable cause standard.  Id.

Similarly, the Tenth Circuit has recognized claims challenging a seizure made

pursuant to an ex parte juvenile court order.  See Malik V. Arapahoe Cnty. Dept. of

Social Servs., 191 F.3d 1306, 1316 (10th Cir. 1999) (recognizing that obtaining a court

order to seize a child through distortion, misrepresentation, and omission is a violation

of the Fourth Amendment); U.S. v. Colonna, 360 F.3d 1169, 1174 (10th Cir. 2004)

(finding that the Fourth Amendment is violated when an affiant knowingly and

intentionally or with reckless disregard for truth makes a false statement in an affidavit

to procure a warrant, but misstatements resulting from simple negligence or

inadvertence will not invalidate a warrant).

Defendants argue that plaintiffs have failed to plead facts sufficient to show that

ex parte court orders were obtained through *material* omissions and falsehoods.  An

omission is material if it is so probative as to negate reasonable suspicion.  See U.S. v.

Ruiz, 664 F.3d 833, 838 (10th Cir. 2012); Gomes v. Wood, 451 F.3d 1122, 1131 (10th

Cir. 2006) (finding that the reasonable suspicion standard applies to child custody

cases).  In other words, defendants argue that the ex parte orders would still have been

issued, and by extension reasonable suspicion that the children were in danger would

still have been found, if the alleged omissions had been included in the information

provided to the judge by McAfee.  See Bruner v. Baker, 506 F.3d 1021, 1026 (10th Cir.

2007) (stating that the court should examine the affidavit as if the omitted information

14

had been included and determine whether the relevant standard would have still been met); Malik, 191 F.3d at 1315 (finding a temporary custody order may be sought if "the circumstances or conditions of the child are such that continuing the child's place of residence or in the care and custody of the person responsible for the child's care and custody would present a danger to that child's life or health in the reasonably foreseeable future") (quoting Colo. Rev. Stat. § 19-3-405(2)(a)).

The following allegations of omissions regarding the custody orders are made by plaintiffs: (1)"Defendants did not disclose to the magistrate that they had attempted to compel a strip search in violation of the Fourth Amendment, and that the only lack of cooperation from Parents was that they refused to compel their daughter to participate in a strip search, and had engaged in expressive conduct protected by the First Amendment;" and (2) "Defendants did not disclose to the magistrate that they knew Y.C. was not in any immediate danger."  Docket No. 45, at 32-33.  Plaintiffs do not make any allegations of affirmative falsehoods or misstatements made by McAfee.

As to what information McAfee told the judge in order to obtain the ex parte order, it can be reasonably inferred that McAfee told the judge of the anonymous allegations that Y.C. had been physically abused.  Docket No. 45, at 9.  It can also be reasonably inferred that McAfee told the judge that Y.C. had "acknowledged that there were marks on her buttocks."  Docket No. 45, at 9.

The court finds that the omissions alleged by plaintiffs are not material, and therefore plaintiffs have failed to state a Fourth Amendment claim as to Y.C.'s right to be free from unreasonable seizures.  The judge who issued the ex parte custody orders was told that anonymous allegations of abuse against Y.C. had been received by

15

defendants.  Further, the judge was told that Y.C. acknowledged that she had marks on her buttocks, thereby, at least to some degree, substantiating the anonymous abuse allegations.  Based on this information, the judge found reasonable suspicion that continued custody of the children by John and Jane Doe would present a danger to the children in the reasonably foreseeable future.

Even if the judge had been told that John and Jane Doe had refused to compel Y.C. to strip or cooperate, the court fails to see how this information would have changed the judge's determination.  John and Jane Doe's lack of cooperation would not have any effect on the finding of reasonable suspicion that the children faced danger in the reasonably foreseeable future.  In other words, Parents' lack of cooperation does nothing to bring into question or refute the information the judge relied upon in making his or her determination, i.e., the anonymous allegations and the acknowledgment of marks on Y.C.'s buttocks.  Accordingly, the court finds that the omission as to John and Jane Doe's lack of cooperation is not material.

As to the allegation that defendants failed to tell the judge that Y.C. was not in any immediate danger, the court also finds that this alleged omission is not material. The relevant standard the judge made his or her determination on was whether reasonable suspicion existed that Parents' continued custody of the children would present a danger to the childrens' life or health in the *reasonably foreseeable future*. See Colo. Rev. Stat. § 19-3-405(2)(a) (emphasis added).  Accordingly, whether the children faced *immediate* danger was not material to the judge's determination.  Such an omission would only be material if defendants had attempted to take custody of the children without an ex parte court order.  See Gomes, 451 F.3d at 1128-30 (finding that

16

a child may be removed from the home without judicial authorization for the removal if there is reasonable suspicion of an immediate threat to the safety of the child). Based on the above analysis, the court finds that the ex parte custody orders were valid and reasonable. Accordingly, the court finds that Claim Three should be dismissed for failure to state a claim.

## IV. Claims Four and Five

Claims Four and Five assert violations of John Doe and Jane Doe's First Amendment rights against compelled speech. Claims Four and Five are made against Defendants Joanna McAfee, Kathy Tremaine, Patsy Hoover, Lisa Little (Supervisor of the Day), Benjamin Dearmont, Joey Harris, and Jon Price. Additionally, Claim Four is made against Jonathon Hudson and Andrew Romano.

Plaintiffs allege that John and Jane Doe were engaged in constitutionally protected activities when they "refused to compel [Y.C.] to submit to an unconstitutional strip search." Docket No. 45, at 34-35. Plaintiffs allege defendants retaliated against John and Jane Doe for their refusals by taking custody of their children. Docket No. 45, at 34-36. Plaintiffs allege that John Doe was "harangued and bullied" and that Jane Doe was subjected to a felony stop. Docket No. 45, at 34-36. Plaintiffs allege that such circumstances, along with the threat of "[l]osing custody of one's children," would chill a person of ordinary firmness from continuing to exercise his or her constitutional rights. Docket No. 45, at 34-36.

"The First Amendment, as applied to state and local governments through the Fourteenth Amendment, provides that state actors 'shall make no law . . . abridging the freedom of speech.'" Cressman v. Thompson, 719 F.3d 1139, 1147 (10th Cir. 2013)

17

(quoting Hawkins v. City & Cnty. of Denver, 170 F.3d 1281, 1286 (10th Cir. 1999)).

"Just as the First Amendment may prevent the government from prohibiting speech, [it]

may prevent the government from compelling individuals to express certain views."

United States v. United Foods, Inc., 533 U.S. 405, 410 (2001).  Thus, "one important

manifestation of the principle of free speech is that one who chooses to speak may also

decide what not to say."  Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Boston,

515 U.S. 557, 573 (1995) (quotations omitted).

Ideological speech is not the only form of forbidden compelled speech.  Cressman, 719

F.3d at 1152-53.  The constitutional harm of compelled speech - being forced to speak

rather than to remain silent - "occurs regardless of whether the speech is ideological."

Id. at 1152.

        A plaintiff must allege three elements to show a First Amendment retaliation

claim: (1) that the plaintiff was engaged in constitutionally protected activity; (2) that the

defendant's actions caused the plaintiff to suffer an injury that would chill a person of

ordinary firmness from continuing to engage in that activity; and (3) that the defendant's

adverse action was substantially motivated as a response to the plaintiff's exercise of

constitutionally protected conduct.  Worrell v. Henry, 219 F.3d 1197, 1212 (10th Cir.

2000).

        Plaintiffs have plainly met the first element, as plaintiffs allege that John and Jane

Doe refused to instruct Y.C. to comply with the strip search.  As detailed above, being

forced to speak in lieu of remaining silent, even if the compelled speech is not

ideological in nature, is a constitutionally protected activity.

        As to the second element, defendants argue there are no facts to support the

18

conclusion that defendants' actions caused John or Jane Doe to suffer an injury that

would chill a person of ordinary firmness from continuing to engage in that activity.

Defendants point out that, despite the alleged "haranguing and bullying," and the threat

of taking custody of their children, John and Jane Doe continued their constitutionally

protected activity, i.e., they each continued to refuse to order Y.C. to comply with the

strip search.  In particular, defendants point to plaintiffs' allegation that John Doe "lay

down in the driveway in a non-threatening position and covered his face with his hat, as

a form of expressive conduct and protest."  Docket No. 45, at 14.

Defendants' argument is misplaced.  The second element - whether defendants'

actions caused John or Jane Doe to suffer an injury that would chill a person of ordinary

firmness from continuing to engage in the protected activity - requires an objective, not

subjective, standard.  See Eaton v. Meneley, 379 F.3d 949, 954-55 (10th Cir. 2004)

("[T]he objective standard permits a plaintiff who perseveres despite governmental

interference to bring suit."); Smith v. Plati, 258 F.3d 1167, 1177 (10th Cir. 2001) ("The

focus, of course, is upon whether a *person of ordinary firmness* would be chilled, rather

than whether the particular plaintiff is chilled.") (emphasis in original).  Accordingly,

whether John or Jane Doe were actually chilled is irrelevant.  Furthermore, the court

finds that a person of ordinary firmness, faced with the alleged haranguing and bullying,

and particularly with the prospect of losing custody of his or her children, would be

chilled in continuing with the constitutionally protected activity.

Finally, as to the third element, plaintiffs allege that custody of the children was

sought in retaliation for John and Jane Doe's refusal to cooperate with the strip search.

Docket No. 45, at 15.  Accordingly, plaintiffs have alleged that defendants' actions were

19

substantially motivated by John and Jane Doe's refusals.  The court, therefore, finds

that plaintiffs' Claims Four and Five adequately allege First Amendment compelled

speech claims.

**V. Claim Six**

Claim Six asserts violation of Jane Doe's Fourth Amendment right to be free of

unreasonable search and seizure.  Claim Six is made against Defendants Joanna

McAfee, Kathy Tremaine, Patsy Hoover, Lisa Little (Supervisor of the Day), Benjamin

Dearmont, Joey Harris, and Jon Price.

Plaintiffs allege that "[a]lthough they knew that [Jane Doe] and Y.C. were

returning to the state to comply with the court's medical order, County personnel did not

give state patrol this information or rescind the BOLO ["be on the lookout"] on [Jane

Doe's] car."  Docket No. 45, at 36.  Plaintiffs further allege that "[t]here was no probable

cause to execute a felony stop, or to search and seize Jane Doe.  County personnel

knew this was an unreasonable stop, and hid this information from state patrol."  Docket

No. 45, at 37.  Accordingly, plaintiffs allege that defendants' actions caused Jane Doe to

undergo a Fourth Amendment violation.  Docket No. 45, at 37.

 "An investigative detention, also called a Terry stop, is an encounter in which

police may 'stop and briefly detain a person for investigative purposes.'"  Morris v. Noe,

672 F.3d 1185, 1191 (10th Cir. 2012) (quoting United States v. Sokolow, 490 U.S. 1, 7

(1989)); see also Terry v. Ohio, 392 U.S. 1 (1968).  An officer must have "reasonable

suspicion supported by articulable facts that criminal activity 'may be afoot[.]'"  Id.

(quoting Sokolow, 490 U.S. at 7).  A Terry stop must cease once the officer's suspicion

is dispelled.  United States v. Winder, 557 F.3d 1129, 1134 (10th Cir. 2009).

20

During an investigative detention, "[p]olice officers are authorized to take
reasonable steps necessary to secure their safety and maintain the status quo." United
States v. Gama-Bastidas, 142 F.3d 1233, 1240 (10th Cir. 1998); see also United States
v. Perdue, 8 F.3d 1455, 1462 (10th Cir. 1993) ("Since police officers should not be
required to take unnecessary risks in performing their duties, they are authorized to take
such steps as are reasonably necessary to protect their personal safety and to maintain
the status quo during the course of a Terry stop.") (quotation, alterations omitted).  In
some circumstances, these safety measures may include a pat-down search for
weapons.  See Terry, 392 U.S. at 21-24, 88.  "The purpose of the limited pat-down
search is not to discover evidence of a crime, 'but to allow the officer to pursue his
investigation without fear of violence.'" U.S. v. Manjarrez, 348 F.3d 881, 886-87 (10th
Cir. 2003) (quoting Adams v. Williams, 407 U.S. 143, 146 (1972)).

In analyzing whether the reasonable suspicion standard is met, the court must
examine "the conduct through a filter of common sense and ordinary human
experience." United States v. Alvarez, 68 F.3d 1242, 1244 (10th Cir. 1995) (quotation
omitted).  Furthermore, the court must "consider the 'totality of the circumstances' when
evaluating the validity of a pat-down." Manjarrez, 348 F.3d at 887.

Claim Six is somewhat novel in that it is made against various defendants in this
matter instead of the state patrol officers and/or government entity which actually
executed the felony stop.  Plaintiffs contend that *but for* defendants' failure to cancel the
BOLO and instruct state patrol to allow Jane Doe and Y.C. to proceed to the medical
examination on their own, Jane Doe would not have suffered the alleged unreasonable
search and seizure.  However, the actual act which forms the basis for the constitutional

21

violation found in Claim Six is the felony stop, and the resulting search and seizure of

Jane Doe.  Accordingly, that act is what must be examined by the court.  However, the

court will analyze the felony stop from the perspective of an individual (such as McAfee)

who was aware of the totality of the circumstances as they existed at the time the stop

was made.

The circumstances as alleged by plaintiffs which led to Jane Doe's felony stop

are as follows.  At some point during defendants' initial investigation, Jane Doe and Y.C.

left the premises unannounced and drove to Kansas.  Docket No. 45, at 13.  Later that

day, defendants obtained a ex parte custody order for Y.C. and the three younger

children.  Docket No. 45, at 16.  Defendants then went to the three younger children's

school to take custody of them.  As the children were being escorted out of their school,

John Doe pulled up in his car and called to the children to get in.  Docket No. 45, at 19.

The children broke away, piled into John Doe's car, and made their way, eventually, to

North Carolina.  Docket No. 45, at 19-20.  At this point, a BOLO was placed on both of

the Does' cars.  Docket No. 45, at 20.

The next morning, defendants obtained a physical examination order for Y.C.

Docket No. 45, at 21.  The Does' family attorney was informed of the custody and

physical examination order on Y.C., and relayed this information to Jane Doe.  Docket

No. 45, at 21.  Jane Doe then agreed to bring Y.C. back to Colorado.  Docket No. 45, at

21.  Does' attorney informed defendants of Jane Doe's intention to bring Y.C. back to

Colorado and comply with the medical examination, however the BOLO on Jane Doe's

car was not canceled.  Docket No. 45, at 22.  Sometime after Jane Doe and Y.C.

reentered Colorado, McAfee received a call informing her that state patrol had spotted

22

Jane Doe's car.  Docket No. 45, at 22.  McAfee did not tell state patrol of Jane Doe's

intent to comply with the medical examination, instead, "she made it sound like [Jane

Doe] was dangerous and might have Children in the trunk of her car."  Docket No. 45, at

22.  At this point, state patrol conducted the felony stop which forms the basis for Claim

Six.

The court finds it significant that both Jane and John Doe had fled the state with

their children prior to the felony stop taking place.  See U.S. v. Gandarilla-Estrada, 162

F.3d 1174, at *4 (10th Cir. 1993) (stating that although "flight alone cannot provide

support for probable cause, it may appropriately be considered as one factor in the

determination of whether the totality of the circumstances supports a finding of probable

cause or reasonable suspicion").  Furthermore, even though John and Jane Doe were

under no obligation to cooperate with defendants during the initial investigation, that

previous lack of cooperation certainly informed defendants' decision to proceed with the

felony stop.  In addition, the fact that John and Jane Doe faced the prospect of

temporarily losing custody of their children, a daunting and emotional situation for any

parent, would make the use of extra precautions all that more reasonable.  Extra

precautions were also reasonable in light of the anonymous report of abuse and Y.C.'s

confirmation that she had marks on her buttocks.  In sum, the circumstances leading to

the felony stop could reasonably be described as volatile and unpredictable.  As to the

Does' attorney's assurances that Jane Doe intended to cooperate with Y.C.'s medical

examination, given the other circumstances as outlined above, the court finds that such

assurances carry little weight.  Under these circumstances, the court finds that the

felony stop and pat-down meet the reasonable suspicion standard.  Accordingly, the

court finds that Claim Six should be dismissed for failure to state a claim.

## VI. Claims Seven and Eight

Claims Seven and Eight assert violations of John Doe, Jane Doe, E.C., E.S.C., and J.C.'s Fourth Amendment and substantive/procedural Fourteenth Amendment rights as to their liberty and privacy interests.  Claims Seven and Eight are made against Defendants Joanna McAfee, Kathy Tremaine, Patsy Hoover, Lisa Little (Supervisor of the Day), Benjamin Dearmont, Joey Harris, Jon Price, Jonathon Hudson, and Andrew Romano.

Plaintiffs allege that John and Jane Doe have "constitutional liberty interests in the care, custody, and control of their Children, and in familial association and privacy." Docket No. 45, at 37.  Similarly, plaintiffs allege that the children have a constitutional liberty interest in being with their parents.  Docket No. 45, at 40.  Plaintiffs further allege that they had a reasonable expectation of privacy when there had been no allegations of child abuse against the three younger children.  Docket No. 45, at 38, 41.  Plaintiffs contend their substantive due process rights were violated because defendants sought custody of the children "when there was no immediate danger to Children, and when [they] had not made reasonable efforts to keep the family together or considered accepted child-rearing practices of the culture in which Children participated."  Docket No. 45, at 38-39.  Furthermore, plaintiffs allege that their procedural due process rights were violated when the custody orders were obtained through omissions and falsehoods.  Docket No. 45, at 38, 42.

First, the court finds that no Fourth Amendment claim has been plead as to John and Jane Doe.  As pointed out by defendants, John and Jane Doe lack standing to

24

claim a Fourth Amendment violation of their children's rights.  "[A] section 1983 claim

must be based upon the violation of [the] plaintiff's rights, and not the rights of someone

else."  Archuleta v. McShan, 897 F.2d 495, 497 (10th Cir. 1990) (citing Dohaish v.

Tooley, 670 F.2d 934, 936 (10th Cir. 1982)).

As to plaintiffs' Fourteenth Amendment claims, the court must weigh two factors:

(1) the state's interests in investigating reports of child abuse; and (2) a plaintiff's

interests in the familial right of association.  Griffin v. Strong, 983 F.2d 1544, 1547 (10th

Cir. 1993).  The court must examine these factors objectively, outside of the facts or

subjective positions of the parties.  Id.  Ultimately the parties' interests in light of the

facts of a particular case are relevant.  Id.

Claims Seven and Eight are premised on defendants having taken custody of the

children pursuant to the ex parte custody orders.  In Section III, *supra*, the court found

that the ex parte custody orders were valid and reasonable under the circumstances,

and accordingly, that plaintiffs had failed to plead an unreasonable seizure claim as to

Y.C.  For substantially the same reasons, the court finds that plaintiffs have failed to

plead a Fourteenth Amendment claim premised on the same custody orders.

Furthermore, the court finds that plaintiffs have failed to plead a Fourth Amendment

claim as to E.C., E.S.C., and J.C.  Accordingly, Claims Seven and Eight should be

dismissed for failure to state a claim.

## VII. Claim Nine

Claim Nine asserts violation of E.C., E.S.C., and J.C.'s rights under the Fourth

Amendment to be free from unreasonable seizures.  Claim Nine is made against

Defendants Joanna McAfee, Kathy Tremaine, Patsy Hoover, Lisa Little (Supervisor of

the Day), Benjamin Dearmont, Joey Harris, Jon Price, Jonathon Hudson, and Andrew Romano.

Plaintiffs allege that when McAfee talked to the children at their school and told them they were not free to leave (thereby restricting their freedom of movement), there was a resulting Fourth Amendment seizure.  Docket No. 45, at 44.  Plaintiffs allege this seizure was unreasonable under the Fourth Amendment.  Docket No. 45, at 44.

The court has it doubts as to whether a seizure of the three younger children actually took place at their school.  The children ran to John Doe's car and left with him, evidencing a belief that they were free to leave.  However, for substantially the same reasons as outlined in sections III and VI, *supra*, the court finds that even if a seizure did take place, it was made pursuant to valid and reasonable custody orders.  As such, the court finds that Claim Nine should be dismissed for failure to state a claim.

## VIII. Claims Ten and Eleven

Claim Ten asserts violation of plaintiffs' rights under the Fourth, Fourteenth, and First Amendment pursuant to governmental customs, policies, or decisions.  Claim Eleven alleges a failure to train or supervise as to rights afforded under the First, Fourth, and Fourteenth Amendment.  Claims Ten and Eleven are made against Patsy Hoover, Lisa Little (Supervisor of the Day), Richard Bengtsson, Jeff Greene, Benjamin Dearmont, Terry Maketa, and El Paso County Board of County Commissioners.

Plaintiffs allege that defendants "had a policy and/or custom that caseworkers could view children's private parts and take photographs of children's private parts whenever injuries were alleged" but "provided no reasonable limitations and safeguards to such strip searches."  Docket No. 45, at 46-47.  Plaintiffs also allege that the "policy

contained no safeguards or guidelines related to age, gender, or sexual orientation of the child, particularly as it interacts with the gender or sexual orientation of the adult allowed to strip search and photograph the child."  Docket No. 45, at 47.  Plaintiffs further allege that it was defendants' "policy and custom . . . that if parents would not give consent, or disagreed with the caseworkers by speech or expressive conduct, caseworkers would call police to compel them in violation of their constitutional rights."  Docket No. 45, at 48.

Plaintiffs further allege that the "training program for protection of children from unconstitutional Fourth Amendment searches and from related trauma and possible sexual abuse was inadequate to train caseworkers and officers to carry out their duties."  Docket No. 45, at 49.  Plaintiffs allege that "[g]iven the high probability of constitutional violations, the fact that constitutional violations in fact occurred, the shockingly high rate of child sexual abuse by public employees in public institutions, and the known and present danger of permitting public officials to examine children's private parts, the need for more training and supervision, or different training and supervision, was obvious."  Docket No. 45, at 49.

Without an underlying constitutional violation by a county employee, there can be no municipal liability based on a municipal policy or custom.  See City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986) (per curiam) ("If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have authorized the use of constitutionally excessive force is quite beside the point."); Estate of Larsen ex rel. Sturdivan v. Murr, 511 F.3d 1255, 1264 (10th Cir. 2008) ("[W]ithout the predicate constitutional harm inflicted by an

27

officer, no municipal liability exists.").  Similarly, when there is no constitutional violation

by a county employee, there can be no action for failure to train.  See Apodaca v. Rio

Arriba County Sheriff's Dep't, 905 F.2d 1445, 1447 (10th Cir. 1990).

The root or underlying constitutional deprivation that plaintiffs' Claims Ten and

Eleven are based upon is the attempted strip search of Y.C. at her parents' home, i.e.,

Claim One.  As explained in Section I, *supra*, all of the alleged violations in Claim One

are threats, attempts, demands, failures to intervene, or attempts to coerce involving a

search which never took place, and, therefore, Claim One does not rise to the level of a

constitutional deprivation.  As such, no liability exists under Claims Ten and Eleven

since they are based on the constitutional deprivation alleged in Claim One.

Accordingly, the court finds that Claims Ten and Eleven should be dismissed for failure

to state a claim.

**IX. Claim Twelve**

Claim Twelve alleges retaliatory prosecution against John Doe for asserting his

constitutional rights.  Claim Twelve is made against the County Defendants, Ms.

McAfee, Deputy Chief Investigator Randy Stevenson, Deputy Chad Haynes, and

Deputy Mitchell Mihalko.

Plaintiffs allege that "Parents' exercise of their constitutional rights was a

substantial motivating factor for Deputy Mitchell Mihalko to retaliate and cause to be

filed six felony kidnapping charges against [John Doe] with no probable cause, and for

other Defendants to encourage him to do so."  Docket No. 45, at 51.

The elements of a constitutional retaliatory prosecution claim are: "(1) that the

plaintiff was engaging in constitutionally protected activity; (2) that the defendant's

28

actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct." Mimics, Inc. v. Village of Angel Fire, 394 F.3d 836, 847 (10th Cir. 2005). In addition, the person must "plead and prove the absence of probable cause for the prosecution." Becker v. Kroll, 494 F.3d 904, 926 (10th Cir. 2007).

The court has already determined in Section IV, *supra*, that plaintiffs have successfully plead a claim for violation of John Doe's First Amendment right against compelled speech. That constitutional violation forms the basis of plaintiffs' retaliatory prosecution claim. Furthermore, the court finds that a felony prosecution would chill a person of ordinary firmness to continue engaging in the protected activity. Accordingly, the court finds that the first and second elements have been met.

As to the third element, plaintiffs' allege that John Doe's First Amendment conduct "was a substantial motivating factor for Deputy Mitchell Mihalko to retaliate and cause to be filed six felony kidnapping charges against Father with no probable cause, and for other Defendants to encourage him to do so." Docket No. 45, at 51. The court finds that this is sufficient to meet third element and the requirement that plaintiffs plead the absence of probable cause. The court, therefore, finds that plaintiffs' Claim Twelve adequately alleges a constitutional retaliatory prosecution claim.

## X. Qualified Immunity

The qualified immunity doctrine "shields government officials performing discretionary functions from liability for damages insofar as their conduct does not

violate clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Toevs v. Reid</u>, 685 F.3d 903, 909 (10th Cir. 2012).  Qualified immunity can be asserted at both the dismissal stage and the summary judgment stage of litigation.  <u>Behrens v. Pelletier</u>, 516 U.S. 299, 307 (1996).

"Once a defendant raises the defense of qualified immunity in the context of a motion to dismiss, a court must first determine whether the plaintiff has asserted a violation of federal law." <u>Currier v. Doran</u>, 242 F.3d 905, 917 (10th Cir. 2001).  Second, "the plaintiff must demonstrate to the court that the law on which the plaintiff relies was clearly established at the time of the defendants' actions.  The plaintiff must prove the right was sufficiently clear that a reasonable official would have understood that his conduct violated the right." <u>Id.</u> at 923. (internal citations omitted).  In analyzing whether the right was established the test is whether it would have been "clear to a reasonable [person] that his conduct was unlawful under the circumstances presented." <u>Herrera v. City of Albuquerque</u>, 589 F.3d 1064, 1070 (10th Cir.2009).

Here, as to Claims Four, Five, and Twelve, the court finds that the law supporting these claims were clearly established at the time of defendants' actions.  The cases cited by plaintiffs provide sufficient evidence of such.  Accordingly, the court finds that defendants are not entitled to qualified immunity as to those claims.

## XI. Personal Participation

Under § 1983, when a defendant is sued in his or her individual capacity, the complaint must allege facts that show the defendant personally participated in the alleged violation.  <u>See</u> <u>Foote v. Spiegel</u>, 118 F.3d 1416, 1423 (10th Cir. 1997); <u>Jenkins v. Wood</u>, 81 F.3d 988, 994-95 (10th Cir. 1996) ("[P]laintiff must show the defendant

30

personally participated in the alleged violation, and conclusory allegations are not sufficient to state a constitutional violation."); Bennett v. Passic, 545 F.2d 1260, 1262-63 (10th Cir. 1976). Further, a defendant may not be held liable under § 1983 merely because of his or her supervisory position. Grimsley v. MacKay, 93 F.3d 676, 679 (10th Cir. 1996). Rather, there must be an affirmative link between the alleged constitutional violation and the defendant's own participation or failure to supervise. Butler v. City of Norman, 992 F.2d 1053, 1055 (10th Cir. 1993).

Defendants argue under most of plaintiffs' claims, including Claims Four, Five, and Twelve, that plaintiffs have failed to plead facts sufficient to show personal participation on the part of certain defendants. In response, plaintiffs argue the various defendants may be held liable for their failure to intervene.

It is well established that in the context of excessive force, a law enforcement official may be held liable for a failure to intervene. See Mick v. Brewer, 76 F.3d 1127, 1136 (10th Cir. 1996). Specifically, "an officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force, can be held liable for his nonfeasance." Gruenwald v. Maddox, 274 Fed. Appx. 667, 674 (10th Cir. 2008) (quoting Fundiller v. City of Cooper City, 777 F.2d 1436, 1442 (11th Cir.1985)); see also Mick, 76 F.3d at 1137 (asserting that an officer may be liable for a failure to intervene if he "watched the incident and did nothing to prevent it." (emphasis added)). It is not clear, however, that an official may be held liable for a failure to intervene in the types of constitutional violations at issue in this matter.

Plaintiffs argue the language of failure to intervene applies to any constitutional violation. For support, plaintiffs cite to a Southern District of New York case, Douglas v.

City of New York, 595 F. Supp. 2d 333, 346 (S.D.N.Y. 2009), and a Northern District of Illinois case, Chagolla v. City of Chicago, 07C4557, p. 4 (N.D. Ill. Feb. 8, 2012).

Plaintiffs must cite to "a Supreme Court or Tenth Circuit decision on point or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." Cruz v. City of Laramie, Wyo., 239 F.3d 1183, 1187 (10th Cir. 2001). The court finds that plaintiffs have failed to cite to authority sufficient to meet this standard. As such, the court finds that failure to intervene is not applicable to plaintiffs' claims. With that understanding, the court finds that the following defendants should be dismissed for lack of personal participation.

As to Claim Four, John Doe's compelled speech claim, the court finds that defendant Benjamin Dearmont should be dismissed. The court finds that plaintiffs have alleged sufficient facts to demonstrate personal participation by the remaining defendants named under Claim Four.

As to Claim Five, Jane Doe's compelled speech claim, the court finds that defendants Benjamin Dearmont, Joey Harris, and Jon Price should be dismissed. The court finds that plaintiffs have alleged sufficient facts to demonstrate personal participation by the remaining defendants named under Claim Five.

As to Claim Twelve, John Doe's retaliatory prosecution claim, the court finds plaintiffs have alleged sufficient facts to demonstrate personal participation by each defendant named under Claim Twelve.

**WHEREFORE,** for the foregoing reasons, it is hereby

**RECOMMENDED** that the Motion to Dismiss Third Amended Complaint (Docket

32

No. 52) and the County Defendants' Motion to Dismiss Third Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) (Docket No. 59) be **GRANTED IN PART AND DENIED IN PART**.

The motions should be **GRANTED** insofar as Claims One, Two, Three, Six, Seven, Eight, Nine, Ten, and Eleven should be dismissed with prejudice for failure to state a claim upon which relief can be granted. In addition, defendant Benjamin Dearmont should be dismissed with prejudice from Claim Four and defendants Benjamin Dearmont, Joey Harris, and Jon Price should be dismissed with prejudice from Claim Five.

The motions should be **DENIED** in all other respects. Specifically the following three claims should remain: (1) Claim Four as against Defendants Joanna McAfee, Kathy Tremaine, Patsy Hoover, Lisa Little (Supervisor of the Day), Joey Harris, Jon Price, Jonathon Hudson, and Andrew Romano; (2) Claim Five as against Defendants Joanna McAfee, Kathy Tremaine, Patsy Hoover, and Lisa Little (Supervisor of the Day); and (3) Claim Twelve as against the County Defendants, Ms. McAfee, Deputy Chief Investigator Randy Stevenson, Deputy Chad Haynes, and Deputy Mitchell Mihalko.

**NOTICE: Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve and file specific written objections to the above recommendation with the District Judge assigned to the case. A party may respond to another party's objections within fourteen (14) days after being served with a copy. The District Judge need**

33

not consider frivolous, conclusive, or general objections.  A party's failure to file

and serve such written, specific objections waives de novo review of the

recommendation by the District Judge, <u>Thomas v. Arn</u>, 474 U.S. 140, 148-53

(1985), and also waives appellate review of both factual and legal questions.

<u>Makin v. Colo. Dep't of Corr.</u>, 183 F.3d 1205, 1210 (10th Cir. 1999); <u>Talley v. Hesse</u>,

91 F.3d 1411, 1412-13 (10th Cir. 1996).


Date:  March 10, 2014                        s/ Michael J. Watanabe
          Denver, Colorado                    Michael J. Watanabe
                                                        United States Magistrate Judge