**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Chief Judge Marcia S. Krieger**

**Civil Action No. 13-cv-01287-MSK-MJW**

**JOHN DOE;
JANE DOE;
Y.C.;
E.C., by her parents and next friends;
E.S.C., by his parents and next friends; and
J.C., by his parents and next friends,**

      **Plaintiffs,**

**v.**

**JOANNA MCAFEE,
KATHY TREMAINE,
PATSY HOOVER,
LISA LITTLE,
RICHARD BENGTSSON,
JEFF GREENE,
EL PASO COUNTY DEPARTMENT OF SOCIAL SERVICES,
JOEY HARRIS,
JON PRICE,
BENJAMIN DEARMONT,
MITCHELL MIHALKO,
TERRY MAKETA,
EL PASO COUNTY SHERIFF'S OFFICE,
EL PASO COUNTY BOARD OF COUNTY COMMISSIONERS,
JONATHAN HUDSON,
ANDREW ROMANO,
JAKE SHIRK,
MONUMENT POLICE DEPARTMENT,
CHAD HAYNES, and
RANDY STEVENSON,**

      **Defendants.**

---

**OPINION AND ORDER ADOPTING SUSTAINING IN PART AND OVERRULING IN
PART OBJECTIONS TO RECOMMENDATION AND GRANTING IN PART AND
DENYING IN PART MOTIONS TO DISMISS**

**THIS MATTER** comes before the Court on the Magistrate Judge's Recommendation (**#73**) to grant in part and deny in part certain Defendants' Motions to Dismiss (**#52, 59**). Defendants McAfee, Tremaine, Hoover, Little, Bengtsson, and Greene (collectively, "DHS Defendants"), Harris, Price, Dearmont, Mihalko, Haynes, Stevenson, and Maketa (collectively, "Sheriff Defendants"), the El Paso County Board of County Supervisors ("Board"), and Haynes and Stevenson (collectively, the "DA Defendants") filed timely Objections (# 76), to which the Plaintiffs filed a response (# 83). Defendants Hudson and Romano (collectively, "Monument Defendants") filed timely Objections (# 78), to which the Plaintiffs responded (# 83). And the Plaintiffs filed timely Objections (# 79), to which the Monument Defendants (# 82) and the DHS/Sheriff/DA Defendants and Board responded (# 84).

## FACTS

The parties do not object to the Magistrate Judge's factual recitation, summarizing the operative facts in the Third Amended Complaint (# 45), and this Court therefore adopts that recitation. In summary, on April 17, 2012, the Does learned that their 15-year old daughter, Y.C., had engaged in sexual activity with a classmate and had broken school rules. The Does punished Y.C. by administering two separate "spanking[s] that consisted of 20 swats on the backside with a light rod."

At some point thereafter, the El Paso County Department of Human Services ("DHS") received an anonymous report of alleged child abuse relating to Y.C. On April 19, 2012, Defendant McAfee, a DHS caseworker, went to the Does' home to investigate. Ms. McAfee interviewed Y.C., who "acknowledged that there were marks on her buttocks," but when Ms. McAfee requested that Y.C. remove her pants so Ms. McAfee could photograph her buttocks, Y.C. refused. After unsuccessfully prevailing upon the Does to convince Y.C. to comply, Ms.

McAfee stated that if Y.C. did not cooperate, Ms. McAfee was "going to have to call law enforcement." That threat was unavailing, and Ms. McAfee then called the El Paso County Sheriff's Department.

Monument Police Department officers Romano and Hudson responded to Ms. McAfee's call. They attempted to persuade Y.C. and the Does to comply with Ms. McAfee's request, but were unsuccessful. El Paso County Sheriff's Deputies Price and Harris also arrived on the scene, but had no more success. Ms. McAfee told Mr. Doe that "she would have to ask for custody if he did not cooperate" and instruct Y.C. to comply, but he continued to refuse. In the meantime, Ms. Doe and Y.C. "left the premises unannounced and drove to Kansas." After conferring with her supervisor (whom the Plaintiffs identify as "possibly [Ms.] Hoover or [Ms.] Little"), Ms. McAfee "personally contacted [a] judge and asked for [an *ex parte*] verbal order for DHS custody of all four [of the Does'] children." The Plaintiffs note that "there were no allegations or information whatsoever that any of the other three children had been abused or were in danger."

Ms. McAfee then went to the children's school to talk to the remaining three Doe children. She had the children summoned to the school office, identified herself as being from DHS, and requested certain identifying information about the children. The children refused to provide the information and asked about their rights, to which Ms. McAfee responded that they "have no rights." In the meantime, Ms. McAfee received a call from the court, granting her oral request for a custody order. Ms. McAfee sought to take the children to DHS offices for further questioning, and she and Defendant Tremaine, another DHS caseworker assisting Ms. McAfee, began walking the children out of the school. At that time, Mr. Doe pulled into the parking lot, and the children ran to him and got into his car. The children informed Mr. Doe that they were

in fear for their safety from the DHS officials.  Mr. Doe and the children then drove to North Carolina.

That afternoon, Ms. McAfee posted a custody order on the door of the Does' residence. Ms. McAfee then contacted her supervisor, the County Attorney, and law enforcement officials. Deputy Price discussed the matter with his supervisor, Defendant Dearmont, who instructed Deputy Price to "initiate a case for Violation of Custody," despite knowing that neither of the Does had personally been informed of the custody order.  At that time, Deputy Price also put out a "BOLO" ("be on the lookout") notification for the Does' vehicles through law enforcement channels.

The following day, the Does' family attorney contacted DHS.  That attorney was informed that DHS had obtained a court order directing that Y.C. submit to a medical examination, and the attorney was further notified of the custody order.   The attorney informed DHS officials that Ms. Doe would be returning with Y.C. and that they would submit to an examination by their family medical provider that afternoon.  The County Attorney found that arrangement unacceptable and directed that Y.C. be examined at Memorial Hospital (although it is unclear from the Third Amended Complaint whether this was communicated to the family's attorney or the Does).

Although Ms. Doe had agreed to return with Y.C., the Sheriff's Department did not cancel the BOLO notification.  At some point that day, the Colorado State Patrol ("CSP") spotted Ms. Doe's vehicle, contacted Ms. McAfee to inform her of that fact, and Ms. McAfee responded that the CSP should pull the car over and inform her when they had secured Y.C.  The CSP performed a "felony stop" of the vehicle with guns drawn, ordered Ms. Doe and Y.C. out of the car, and handcuffed them.  CSP subsequently released Ms. Doe, but retained custody of Y.C.

4

and delivered her to Ms. McAfee.  Y.C. then submitted to the medical examination at Memorial Hospital.

Some time thereafter, Mr. Doe arrived in North Carolina, leaving the remaining three children in the custody of their grandparents.  DHS personnel were notified of the children's whereabouts through some unknown means.  DHS personnel contacted the local social services agency in North Carolina, informing them of the custody order, and directing them to take the remaining children into custody.  Ms. McAfee apparently traveled to North Carolina and facilitated the children's return.  The DHS prepared a Dependency and Neglect Petition regarding all four children, and the children remained in DHS custody until July 2, 2012.  (The parties ultimately entered into "an informal adjustment" in late July, returning custody of the children to the Does.  The formal Dependency and Negelct proceeding was ultimately dismissed.)

Meanwhile, on April 20, as the discussions with the family attorney were occurring, Defendant Mihalko, a Sheriff's Department detective, began an investigation into the Does for child abuse.  On April 26, 2012, he filed charges of misdemeanor child abuse against both parents.  In May 2012, Detective Mihalko considered filed further felony kidnapping charges against Mr. Doe, based on Mr. Doe removing the children to North Carolina in violation of the custody order.  (The Plaintiffs point out that Mr. Doe had not, at that time, been personally served with that order.)  In August 2012, Defendants Haynes and Stevenson formally charged Mr. Doe with three felony counts of kidnapping and three felony counts of violation of a custody order.  Mr. Doe ultimately pleaded guilty to one count of misdemeanor child abuse; the charges against Ms. Doe were dismissed pursuant to a deferred prosecution agreement.

The Third Amended Complaint alleges numerous claims, all under 42 U.S.C. § 1983: (i) a claim by Y.C. against certain DHS Defendants (McAfee, Hoover, Little), certain of the Sheriff Defendants (Price, Dearmont, and Harris), and the Monument Defendants for violation of her Fourth Amendment rights, arising out of the "attempted unreasonable search of her person" on April 19[1]; (ii) a claim by Y.C. against the same subset of DHS Defendants, the same subset of Sheriff's Defendants, and the Monument Defendants for violation of her Fourth and Fourteenth Amendment rights to privacy, in that she "faced an unconstitutional invasion of her privacy when . . . Ms. McAfee demanded that she expose her private parts for viewing and photography"; (iii) a claim by Y.C. against the same subset of DHS and Sheriff's Defendants for violation of her Fourth Amendment rights, in that these Defendants "sought a custody order for Y.C." based on "reckless omissions and misstatements to a magistrate" and/or issued the BOLO notice (despite the Does not having been notified of the custody order) and failed to rescind it; (iv) a claim by Mr. Doe against same subset of DHS Defendants (plus Defendant Tremaine), the subset of Sheriff's Defendants, and the Monument Defendants for violation of his First Amendment rights, in that they retaliated against him for "refus[ing] to compel his daughter to submit to an unconstitutional strip search" by "harangu[ing] and bull[ying]" him; (v) a claim by Ms. Doe against the same subset of DHS Defendants (including Tremaine) and Sheriff's Defendants for violating her First Amendment rights by retaliating against her for refusing to

---

[1]       In several of the claims, the Plaintiffs allege additional allegations that, arguably, state alternative or supplemental legal theories.  For example, in the recitation of Y.C.'s first claim for relief, the Plaintiffs also allege that "coercive behavior related to the Fourth Amendment is also a substantive due process violation under the Fourteenth Amendment," and that "threats to parents that a child will be taken into protective custody if the parent does not comply . . .  are coercive behavior and unconstitutional retaliation," among others.  It is not clear that Y.C. is purporting to assert separate claims based on these and other alternative theories, and given the Plaintiffs' representation by counsel, the Court will be guided solely by the specific headings given by the Plaintiffs describing each of their claims.

compel Y.C. to comply with Ms. McAfee's requests by "taking custody of her children and subjecting her to a felony stop"; (vi) a claim by Ms. Doe against the same subsets of DHS and Sheriff's Defendants for violation of her Fourth Amendment rights in that they did not cancel the BOLO notification or inform the CSP of "[Ms. Doe's] cooperation and reason for being there," causing the CSP to perform a "humiliating and frightening felony stop"; (vii) a somewhat disjointed claim by Mr. and Ms. Doe against the same subsets of DHS and Sheriff's Defendants and the Monument Defendants for violation of the Fourth and Fourteenth Amendment rights, in that the Defendants deprived them of their "constitutional liberty interests in the care, custody, and control over their children and in familial association and privacy" without a compelling interest when the children are not in danger, that "the custody order for children was obtained without good foundation and in retaliation for [the Does'] exercise of constitutional rights," and that the BOLO notification was unwarranted; (viii) a claim by the three remaining Doe children against the subset of DHS and Sheriff's Defendants and the Monument Defendants for violation of their Fourth Amendment rights, on essentially the same grounds as Claim Seven, along with additional allegations that the Defendants caused the children to suffer during their temporary placement in juvenile custody in North Carolina and their placement in DHS custody upon their return; (ix) a claim by the three remaining children against the same Defendants for violation of their Fourth Amendment rights based on their "seizure" at school and, possibly, their seizure in North Carolina; (x) a claim by all Plaintiffs against a subset of the DHS Defendants (Hoover, Little, Bengtsson, and Greene), a subset of the Sheriff's Defendants (Dearmont and Maketa), and the Board, essentially asserting *Monell* "custom and policy" liability for actions taken by the individual Defendants;  (xi) a similar claim against the same Defendants, essentially asserting *Monell* "failure to train or supervise" liability; and (xii) a claim by Mr. Doe against Ms. McAfee,

Mr. Stevenson, Deputy Haynes, and Detective Mihalko for "retaliatory prosecution for asserting constitutional rights."

Separately, the Monument Defendants **(# 52)** and the DHS and Sheriff's Defendants and the Board **(# 59)** moved to dismiss the claims against them pursuant to Fed. R. Civ. P. 12(b)(6). The Court referred the motions to the Magistrate Judge for a recommendation.  On March 10, 2014, the Magistrate Judge recommended **(# 73)** that the motions be granted in part and denied in part.

Specifically, the Magistrate Judge found that: (i) as to Claims One and Two, no cognizable claim lies for an "attempted" constitutional violation; (ii) as to Claim three, the alleged misrepresentations and omissions from Ms. McAfee's oral request for a custody order were immaterial, and thus, the seizure of the children pursuant to the court-approved custody order prevents any claim; (iii) as to Claims four and five, Mr. and Ms. Doe adequately alleged claims of retaliation for the exercise of First Amendment rights (except as to Defendant Dearmont in Claim four and Defendants Dearmont, Harris, and Price in Claim five, who should be dismissed due to a lack of personal participation in the deprivation); (iv) as to Claim six, the undisputed facts and circumstances provided reasonable suspicion for the CSP to conduct the "felony stop"; (v) as to Claims seven and eight, the court's issuance of a valid custody order provided grounds for the DHS to take custody of the children over any constitutional privacy or liberty interests claimed by the Does; (vi) as to Claim nine, it is unclear whether the remaining three children were actually "seized" at their school, but in any event, the valid custody order permitted such a seizure; (vii) as to the *Monell* claims, the alleged underlying constitutional act was the request that Y.C. submit to a strip search, and because all claims asserting individual constitutional claims arising from that conduct should be dismissed, the *Monell* claims should be

dismissed as well; and (viii) as to Claim twelve, Mr. Doe stated a colorable claim for First Amendment retaliation.

All parties filed timely Objections to various portions of the Recommendation. The Court addresses the parties' particular arguments in the discussion below.

## ANALYSIS

### A.  Standard of review

When a magistrate judge issues a recommendation on a dispositive motion, the parties may file specific, written objections within fourteen days after being served with a copy of the recommendation.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  The district court reviews *de novo* determination those portions of the recommendation to which a timely and specific objection is made.  *See United States v. One Parcel of Real Prop. Known as 2121 E. 30th St.,* 73 F.3d 1057, 1060 (10th Cir. 1996).

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all well-plead allegations in the Complaint as true and view those allegations in the light most favorable to the nonmoving party.  *Stidham v. Peace Officer Standards and Training*, 265 F.3d 1144, 1149 (10th Cir. 2001), *quoting Sutton v. Utah State Sch. For the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999).  The Court must limit its consideration to the four corners of the Complaint, any documents attached thereto, and any external documents that are referenced in the Complaint and whose accuracy is not in dispute.  *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001); *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002).

A claim is subject to dismissal if it fails to state a claim for relief that is "plausible on its face."  *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).  To make such an assessment, the Court first discards those averments in the Complaint that are merely legal conclusions or "threadbare

recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* at 1949-50. The Court takes the remaining, well-pled factual contentions, treats them as true, and ascertains whether those facts support a claim that is "plausible" or whether the claim being asserted is merely "conceivable" or "possible" under the facts alleged. *Id.* at 1950-51. What is required to reach the level of "plausibility" varies from context to context, but generally, allegations that are "so general that they encompass a wide swath of conduct, much of it innocent," will not be sufficient. *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012).

**B. Particular objections**

    1. <u>Claims One and Two</u>

The claims arise from Ms. McAfee's request that Y.C. submit to a strip search. The crux of the Magistrate Judge's recommendation that these claims be dismissed is that no actual search occurred and that no remedy lies for purely "attempted" constitutional violations.

In her Objections, Y.C. argues that the attempted "coercion and threats" related not just to the request that Y.C. submit to the search, but extended to "threats of retaliation to take custody of Y.C. and her siblings," a threat which was "actually carried out." She also contends that a "due process violation caused by coercive behavior of law-enforcement officers is complete with the coercive behavior itself." *Citing Chavez v. Martinez*, 538 U.S. 760, 781 (2003) (Scalia, J. concurring).

Y.C.'s argument that she is actually asserting <u>due process</u> claims in Claims One and Two represents a considerable reshaping of the claims as alleged in the Third Amended Complaint. The most reasonable reading of those claims as pled is the reading given by the Magistrate Judge: that Y.C. was purporting to assert claims based on the Defendants' <u>attempt</u> to perform an

allegedly unconstitutional search, and then to coerce Y.C. into consenting to such a search. Given that Y.C. offers no argument that the Magistrate Judge erred in finding that no claim premised on an "attempted" Fourth Amendment violation can result when no search occurs, the Court agrees with the Magistrate Judge that the first and second claims are properly dismissed to the extent they allege Fourth Amendment violations.

As a newly-formed substantive due process claim, Y.C.'s first and second claims for relief survive only if she alleges facts that show that: (i) she was deprived of a constitutionally-protected liberty or property interest; and (ii) that deprivation occurred under circumstances that are "so brutal and so offensive to human dignity that they shock the conscience." *Chavez*, 538 U.S. at 774. Conscience-shocking conduct is "conduct intended to injure in some way unjustifiable by any government interest." *Id.* at 775. In *Chavez*, the Supreme Court held that a police officer's persistent interrogation of a criminal suspect who had been shot repeatedly and was simultaneously receiving medical treatment at the hospital, all without advising the suspect of his Fifth Amendment rights, was insufficiently conscience-shocking to support a substantive due process claim. Although the Supreme Court did not necessarily approve of the officer's method, it found that "the need to investigate whether there had been police misconduct constituted a justifiable government interest," especially if the suspect died without giving his version of events. *Id.*

Similarly, even if the Court assumes that Y.C. was deprived of some protected liberty interest by Ms. McAfee's requests (or perhaps "demands") that she submit to a search, the Court cannot say that Ms. McAfee's conduct was so "conscience-shocking" as to support a substantive due process claim. Ms. McAfee was investigating an anonymous report that Y.C. had been the victim of child abuse, and Y.C. apparently confirmed that her parents had repeatedly struck her

11

with a rod, leaving "marks on her buttocks."  Under these circumstances, Ms. McAfee's request

that Y.C. allow Ms. McAfee to document the nature and extent of these marks, potentially in

furtherance of a future child abuse prosecution, is hardly "unjustifiable by any government

interest."  When Y.C. refused, Ms. McAfee raised the stakes by first threatening to call in law

enforcement, and then threatening that DHS could seek to take the Does' children into custody.

Both of these threatened (and ultimately carried-out) actions are powers that DHS officials are

granted by law and are authorized to execute in appropriate cases.

One could reasonably argue that the acts threatened by Ms. McAfee were

disproportionate to the governmental need – documenting evidence of Y.C.'s injuries – Ms.

McAfee was attempting to achieve, but that is not enough to elevate the conduct to the necessary

"conscience shocking" levels.  To show a substantive due process violation, a plaintiff "must do

more than show that the government actor intentionally or recklessly caused injury to plaintiff by

abusing or misusing government power."  *Clark v. Edmunds*, 513 F.3d 1219, 1222 (10th Cir.

2008).  Because Y.C. allegations, at best, rise only to the level of Ms. McAfee's (and others')

mere misuse of DHS powers, the Magistrate Judge properly recommended dismissal of Claims

One and Two.

2.  Claim Three

The Magistrate Judge understood Claim Three to allege that Y.C. was alleging that she

was unlawfully seized pursuant to the custody order, insofar as Ms. McAfee made

misrepresentations and omissions to the court when seeking that order.  The Magistrate Judge

concluded that the alleged misrepresentations and omissions alleged by Y.C. were immaterial.

In her Objections, Y.C. appears to offer two separate arguments: (i) that the Magistrate

Judge's conclusion that the custody order was validly issued is erroneous for various reasons;

and (ii) that the CSP's felony stop of Y.C. and her mother constitutes a separate, actionable seizure.

Y.C. appears to argue that Ms. McAfee's seeking the custody order via a verbal, *ex parte* application to the court violated her procedural due process interests. At the outset, the Court has some doubt that the named Defendants here are proper parties in this regard. By all appearances from the allegations in the Third Amended Complaint, the (unspecified) court agreed to hear Ms. McAfee's initial petition for a preliminary custody order on a verbal, *ex parte* basis. To the extent this was a due process deprivation, it was a deprivation by the <u>court</u> for proceeding in that manner, not a deprivation by Ms. McAfee to avail herself of a procedure the court permitted. Y.C. has not named the court itself or the judge issuing the custody order as parties here, and thus, this Court has doubt that a procedural due process challenge of this type lies here. Moreover, it appears that oral, *ex parte* applications for temporary protective custody are expressly permitted under Colorado law. C.R.S. § 19-3-405(1) provides that a court "may issue <u>verbal</u> or written temporary protective custody orders" and that courts must designate a judge "to be available <u>by telephone</u> at all times to act with the authorization and authority of the court to enter such orders." (Emphasis added.) The Defendants here can hardly be faulted for availing themselves of a process expressly permitted under state law.

Y.C. also argues that the temporary order of custody was not supported by a sufficient showing of emergency circumstances under state law. Arguably, a law enforcement official's execution of a warrant or order that the official knows was insufficiently-supported may subject the officer to liability for a Fourth Amendment violation. *See e.g. Naugle v. Witney*, 755 F.Supp. 1504, 1519 (D. Ut. 1990). Y.C. appears to argue, and the Court assumes, that the temporary custody order was issued pursuant to C.R.S. § 19-3-405. That statute provides that such orders

may issue where the requesting party "believes that the circumstances or conditions of the child are such that continuing the child . . . in the care and custody of the person responsible for the child's care and custody would present a danger to that child's life or health in the reasonably forseeeable future."  C.R.S. § 19-3-405(2)(a).  The Third Amended Complaint indicates that, at the time Ms. McAfee sought the custody order, she had obtained confirmation from Y.C. that her parents had spanked her with a rod two days earlier with sufficient force to leave marks on her body two days later, that Y.C.'s parents were refusing to assist the DHS in investigating the incident, and that Y.C.'s mother had spirited Y.C. away in the midst of Ms. McAfee's efforts to document Y.C.'s condition.  Under these circumstances, the Court cannot say that the court's determination that the DHS indeed believed that the Does' continued custody of Y.C. posed a danger to her health in the foreseeable future was so patently unreasonable that the Defendants here should have recognized that the temporary custody order was facially-invalid.

Finally, Y.C. objects to the Magistrate Judge's findings that the alleged misrepresentations and omissions that Ms. McAfee made when seeking the temporary custody order were immaterial.  Y.C. identifies the following alleged misrepresentations and omissions in her Objections that she contends were material: (i) "that the Defendants did not disclose . . . that they had attempted to compel a strip search in violation of the Fourth Amendment and that the only lack of cooperation from Parents was that they refused to compel their daughter to participate in a strip search"; (ii) that the Does and Y.C. "voluntarily participated in the investigation and were interviewed"; (iii) that Ms. McAfee "knew none of the four children were in danger" and failed to disclose that information; (iv) that "there were no allegations of abuse against the other children and no reason to think they were in danger, so there was no emergency."

The first two of these alleged misrepresentations or omissions – that the only resistance from Y.C. and the Does was to Y.C. participating in a "strip search" – would appear to be the type of information that Ms. McAfee would indeed have conveyed to the court.  Obviously, Ms. McAfee would have reported to the court that Y.C. had participated in an interview and confirmed the presence of marks on her buttocks, and Ms. McAfee would further have conveyed to the Court that the Does removed Y.C. when Ms. McAfee had requested to photograph those marks.  The characterization of that request to submit to being photographed as "a strip search in violation of the Fourth Amendment" is simply a conclusory characterization of Ms. McAfee's request, and as noted above, Ms. McAfee undoubtedly reported to the court that she had requested the opportunity to photograph Y.C.'s injuries.  Accordingly, the Court finds no error in the Magistrate Judge's conclusion that Y.C. failed to allege any material misrepresentations or omissions by Ms. McAfee in seeking a protective custody order <u>as to her</u>.

There is some arguable merit in the argument that Ms. McAfee lacked any factual basis to believe that the remaining three children were also at risk of harm in the foreseeable future.[2] And the Third Amended Complaint does allege that Ms. McAfee sought an order taking temporary custody over not just Y.C., but all four Doe children.  However, the Court notes that the Third Amended Complaint alleges Claim Three only on behalf of Y.C. – the claim begins with the header "Violation of Y.C.'s rights under the Fourth Amendment . . ." and the ensuing paragraphs in that claim make no mention of the other children whatsoever.  Thus, because Y.C. has not shown any misrepresentations or omissions that would affect the issuance of the

---

[2]     Except, perhaps, the assumption that the Does would discipline all of their children in the same manner that they disciplined Y.C., nothing in the Third Amended Complaint recites facts that would suggest a basis for that assumption, however.

temporary custody order <u>as to her</u>, the Magistrate Judge properly recommended that Claim Three be dismissed.

Y.C.'s Objections also argue that Claim Three's allegations of an improper Fourth Amendment seizure are supported by allegations concerning the CSP's "felony stop" of Ms. Doe's car when she was returning from Kansas with Y.C. Specifically, she alleges that "Defendants put out a BOLO on Y.C." that was "spurious and retaliatory." This allegation is without merit. At the time the BOLO notification was issued, Ms. Doe had left Colorado with Y.C. and McAfee had obtained a court order granting DHS temporary custody of Y.C. Ms. Doe had received notice of that custody order through Ms. McAfee's discussion with the Does' "family attorney." The Third Amended Complaint seems to suggest that the parties reached an "agreement" by which Ms. Doe would produce Y.C. for a physical examination, but then goes on to indicate that there was some unresolved dispute over how that examination would be conducted. Under these circumstances, Ms. McAfee was justified in requesting that the CSP take Y.C. into custody, consistent with the rights granted to DHS by the custody order.

Moreover, the Court finds no well-pled allegations in the Third Amended Complaint of any misrepresentation by Ms. McAfee to the CSP to induce them to conduct a more harsh traffic stop than they ordinarily might. The Third Amended Complaint alleges that Ms. McAfee "told [the CSP] that the child and mother should be in [the car], and to call her when they had [Y.C.]." Neither of these statements is a misrepresentation. Y.C. alleges that Ms. McAfee failed to inform the CSP that Ms. Doe "was complying [with the order for a medical exam]," but, as noted above, the Third Amended Complaint suggests the opposite: that Ms. Doe had agreed to produce Y.C. for an examination by her family doctor, but the County Attorney demanded that the examination take place at Memorial Hospital instead. The Third Amended Complaint does not

16

allege that the parties resolved this dispute before Ms. Doe was stopped by the CSP, and thus, there is no indication that Ms. McAfee knew that Ms. Doe was indeed complying with the County Attorney's demand.

For these reasons, the Court agrees with the Magistrate Judge that Claim Three is properly dismissed.

### 3. Claims Four and Five

These claims allege that the named Defendants retaliated against Mr. and Ms. Doe for their exercise of their First Amendment rights to oppose Ms. McAfee's demand to photograph Y.C.'s injuries. The Magistrate Judge found that these claims were sufficiently pled and could proceed. Both the Monument Defendants and the DHS/Sheriff's Defendants object to these findings. (The parties do not disagree with, and this Court therefore adopts by reference, the Magistrate Judge's statement of the legal standards governing this claim.)

The DHS/Sheriff's Defendants argue first that neither Doe engaged in protected conduct, as the "refus[al] to comply with [an] investigation, without expressing or declining to express some sort of message, . . . does not constitute protected expression." The Defendants offer no citation in support of this proposition, and the Court rejects it. The Third Amended Complaint alleges that Mr. Doe expressly stated that he "didn't have the right to order [Y.C] to strip." The precise meaning of this statement is not necessarily clear, but arguably, Mr. Doe's statements were a protected expression of his opinion on his legal or moral rights. Moreover, the Third Amended Complaint later alleges that Mr. Doe "lay down in the driveway in a non-threatening position . . . as a form of expressive conduct and protest." Thus, the Magistrate Judge properly concluded that Mr. Doe alleged he engaged in protected First Amendment conduct.

The record is less clear with regard to Ms. Doe.  The only allegation in the Third Amended Complaint that recites Ms. Doe making any particular statement in the presence of Ms. McAfee or other Defendants is paragraph 42, which states that Y.C. asked her mother whether she had to strip, to which her mother responded "You have my permission to do it but I'm not going to compel you to do it."  Taken in the light most favorable to the Plaintiffs, the Court will assume that a statement expressing Ms. Doe's belief that she would not resort to the power that she arguably had to compel Y.C. to comply with Ms. McAfee's request is protected expression by Ms. Doe.

The Court has greater difficulty with the finding that the Defendants then subjected the Does to conduct that would chill a reasonable person's exercise of their First Amendment rights. The Magistrate Judge found that the allegation that the Defendants "harangu[ed] and bull[ied]" the Does was conduct that would sufficiently chill a reasonable person's exercise of First Amendment rights.  Although this Court is not necessarily persuaded that mere conclusory assertions of "haranguing and bullying" is sufficient to allege an injury for First Amendment retaliation purposes, the Court finds, consistent with the discussion above, that the Does were subjected to injury in the form of Ms. McAfee seeking an order of temporary protective custody of the remaining three children, despite having no particular evidence that these children were disciplined by the Does as Y.C. was.  A reasonable argument could be made that Ms. McAfee improperly sought a broader temporary order of protection than she otherwise would have simply because she was angry that the Does were uncooperative with her requests concerning Y.C.

The preceding statement also demonstrates that the Plaintiffs have adequately alleged facts that should show that Ms. McAfee took the adverse action against the Does – seeking

custody of the three remaining children – out of a desire to retaliate against the Does for resisting her requests regarding Y.C.  Accordingly, this Court agrees with the Magistrate Judge that Claims Four and Five state cognizable First Amendment retaliation claims.

There is, however, the question of whether the claim is sufficiently pled against all the Defendants named in it.  The Court begins with the Monument Defendants who specifically object to the Magistrate Judge's recommendation, noting that the Third Amended Complaint does not specifically allege that they engaged in any "haranguing or bullying" of the Does and that they were not involved with Ms. McAfee's decision to seek a temporary order of protection. This Court agrees.  The Third Amended Complaint states only that Officers Romano and Hudson: "patted down [Mr. Doe] and took away his pocket knife"; "talked to [Mr. Doe] in an effort to convince him to order [Y.C.] to strip"; and "talked to [Mr. Doe] at different times." There is a generalized and conclusory assertion that "Ms. McAfee and the police deputies continued to lecture, harangue, and bully [Mr. Doe]," but the Third Amended Complaint does not make clear who is necessarily encompassed by the phrase "police deputies."  In any event, the Court finds that latter contention to be insufficiently specific to warrant further consideration under *Iqbal*.  Because there is no allegation that Officers Romano and Hudson spoke with Ms. McAfee about seeking custody of the three remaining children or otherwise participated in her decision to request such custody, the Court finds that Claims Four and Five should be dismissed against them.

The Court also finds that the Third Amended Complaint is overbroad in identifying the DHS and Sheriff's Defendants arguably liable on these claims.  Because the Court finds that the retaliatory conduct in question is Ms. McAfee's seeking custody of the remaining children, the only Defendants liable on this claims are those involved in that decision.  As discussed below,

the Court finds that the Third Amended Complaint identifies only Defendants McAfee, Little, Harris, and Price with sufficiently specific allegations on this point, and the Court allows these claims to proceed only as to these Defendants.

### 4. Claim Six

In Claim Six, Ms. Doe alleges that the felony stop of her vehicle violated her Fourth Amendment rights.  The Magistrate Judge noted that this claim was not asserted against the CSP (who actually made the stop), and considered only the question of whether Ms. McAfee and other Defendants induced the stop through some misconduct of their own.

Given the preceding discussion with regard to Claim Three, the Court need not extensively address this claim.  Ms. McAfee reported to the CSP that a court had ordered DHS to take temporary custody of Y.C. and that Y.C. was currently traveling with Ms. Doe.  Although Ms. Doe may have believed that she had reached an agreement with DHS about complying with that order, the Third Amended Complaint indicates that agreement was not necessarily complete. Under such circumstances, when the CSP informed Ms. McAfee that they had located Ms. Doe's car, Ms. McAfee properly instructed the CSP to take Y.C. into custody in conformance with the order.  Ms. McAfee gave no instructions to the CSP as to how to conduct the stop, and notwithstanding the conclusory assertions by Ms. Doe that Ms. McAfee "made it sound like [Ms. Doe] was dangerous and might have children in the trunk of the car," the only well-pled allegation about statements made by Ms. McAfee to the CSP is that she "told them that [Y.C.] and [Ms. Doe] should be in [the car], and to call her when they had [Y.C.]."  To the extent the CSP used improper or excessive force in effectuating that stop, nothing in the Third Amended Complaint suggests facts that would allow the Court to hold Ms. McAfee or the other named Defendants liable for that conduct, and thus, this claim was properly dismissed.

5. <u>Claims Seven and Eight</u>

The Magistrate Judge construed Claims Seven and Eight to allege Fourth and Fourteenth Amendment violations against certain Defendants by the Does and the three remaining children. The Magistrate Judge found that the Does could not assert Fourth Amendment rights on behalf of their children, and that the remaining claims failed due to the court's decision to grant the DHS temporary custody of the remaining children as well as Y.C.

The Court agrees with the Magistrate Judge that the Does' derivative Fourth Amendment claims fail, but it declines to adopt the Magistrate Judge's recommendation with regard to the remainder of the claim. It is well-settled that parents and children enjoy reciprocal interests in parental custody, care, and management. *J.B. v. Washington County*, 127 F.3d 919, 925 (10th Cir. 1997). The state has its own interest in "protecting children from physical and sexual abuse," and the Court should give "considerable deference . . . to the judgment of responsible government officials in acting to protect children from perceived imminent danger or abuse." *Id.* Where, as here, parents or children allege substantive due process claims based on a state decision to remove children, the Court must "balanc[e] the party's liberty interests against the relevant state interests." *Id.* at 927. Only actions by state officials that are "directed at the intimate relationship with knowledge that the statements or conduct will adversely affect that relationship," and are undertaken willfully or with the intent to unduly interfere with that relationship, are sufficient to state a claim. *Id.* at 927-28.

Here, the Court has already explained that Ms. McAfee had colorable grounds to seek temporary custody of Y.C., based on Y.C.'s own acknowledgement that she had been physically struck by the Does. Ms. McAfee had no information to believe that the Does had abused any of the remaining children in any way. The only other information that Ms. McAfee had at the time

21

she sought the custody order as to all the children was that the Does themselves were somewhat resistant to her efforts to photograph Y.C.'s injuries, and later spirited Y.C. off before the matter could be resolved.  This Court cannot say that, as a matter of law, these facts were sufficient to permit Ms. McAfee to seek protective custody of the remaining children.  At least based on the allegations of the Third Amended Complaint, Ms. McAfee asked no questions about the other three children when meeting with the Does on April 19, did not seek to interview those children, and there had been no allegations that the other children had been physically abused.  Thus, the Court finds that the Plaintiffs have adequately alleged that Ms. McAfee had no basis to seek temporary protective custody of the remaining three children under C.R.S. § 19-3-405 on April 19.

In the absence of any evidence of abuse of the three remaining children, the state had no particular interest in interfering with the Does' relationship with those three children.  Moreover, as discussed above, the Court finds that the Third Amended Complaint sufficiently alleges facts from which one might infer that Ms. McAfee sought to retaliate against the Does for refusing to assist with Y.C. by seeking custody of the remaining three children.  The Court therefore finds that Claims Seven and Eight state a colorable substantive due process claim under the Fourteenth Amendment with regard to the Does and the three remaining children.

The Court finds that the court's independent issuance of a custody order encompassing the three remaining children does not cure this defect.  If Ms. McAfee had no colorable basis to seek a custody order for these children, the court could not have any reasonable basis to enter such an order, and Ms. McAfee had no basis to believe that any such order was valid.

There is, however, the question of who are the appropriate Defendants on this claim.  The first allegation in the Third Amended Complaint that Ms. McAfee decided to seek custody of the

remaining children is paragraph 86, which states that she "told Deputy Harris privately that she intended to obtain a court order to take custody of all four children." The Third Amended Complaint also alleges that she "told Deputy Jon Price" the same thing. It further alleges that Ms. McAfee "discussed the situation with the DHS Supervisor of the Day," which the Third Amended Complaint identifies as Defendant Little, and with "one or more county attorneys" (who are not named as parties). It further states that Ms. McAfee "discussed this with supervisors on her team, possibly Patsy Hoover and Lisa Little." It then alleges that Ms. McAfee formally contacted the court and sought the custody order for all four children.

The Court finds that the Third Amended Complaint adequately alleges Claims Seven and Eight against Defendants McAfee and Little, with whom Ms. McAfee allegedly consulted (as "Supervisor of the Day") before seeking the custody order. The Court declines to find that an allegation that Ms. McAfee "possibly" consulted with Ms. Hoover is sufficient under *Iqbal*, as that allegation merely asserts a "possibility, not probability." The Court finds, with some reluctance, that Deputies Harris and Price were arguably privy to the same information that Ms. McAfee had (or lacked) regarding the remaining three children, that Ms. McAfee informed them of her decision to seek custody of the remaining children, and that they did not discourage her. Thus, the Third Amended Complaint adequately alleges Claims Seven and Eight against Defendants McAfee, Harris, Price, and Little only.

### 6.  Claim Nine

Interpreting this claim to be a Fourth Amendment claim brought by the three remaining children, based on Ms. McAfee's attempt to take them into custody at their school, the Magistrate Judge found that no seizure occurred, and that even if it did, it occurred pursuant to a valid custody order.

Although the Court has similar reservations as the Magistrate Judge about whether the incident at the children's school constitutes a "seizure" for Fourth Amendment purposes, the Plaintiffs properly note in their objections that Ms. McAfee subsequently induced North Carolina authorities to seize the children and take them into custody, based on the same arguably defective custody order discussed above.  For the same reasons previously discussed, the Court finds this claim to be sufficient.

The Third Amended Complaint is somewhat unclear as to which Defendant(s) were responsible for informing North Carolina authorities of the custody order and seeking their assistance; it refers only to "DHS personnel" as performing these acts.  The Third Amended Complaint alleges that Ms. McAfee traveled to North Carolina to retrieve the children, and thus, the Court will assume that she was involved with contacting North Carolina authorities, but finds insufficient allegations to subject any other Defendant to liability on this claim.  Accordingly, Claim Nine is dismissed as to all Defendants except Ms. McAfee.

7.  Claims Ten and Eleven

Claims Ten and Eleven seek to establish *Monell* liability of the entities employing the various Defendants.  This presents a fine opportunity for the Court to recite the surviving claims to this point:  Claims Four, Five, Seven, and Eight proceed against two officials of DHS and two Sheriff's Deputies, and Claim Nine proceeds only against Ms. McAfee.  Thus, the Court need only consider whether the allegations of *Monell* liability are sufficient against the DHS and Sheriff's Department.

The Plaintiffs' *Monell* allegations are directed solely at these agencies having insufficient policies governing requests by state officials regarding "strip searches" of allegedly abused children.  The Court has found that none of the Plaintiffs' claims predicated on the attempted

24

search of Y.C. survive, and thus, these *Monell* allegations are irrelevant.  Accordingly, the Court dismisses Claims Ten and Eleven.

### 8.  Claim Twelve

Finally, Mr. Doe asserts a claim, presumably under the First Amendment, for "retaliatory prosecution . . . for asserting constitutional rights," alleging that his refusal to assist Ms. McAfee caused Detective Mihalko to retaliate against him by filing felony kidnapping charges without probable cause.  The Magistrate Judge found these allegations sufficient to state a claim.

The Sheriff's Defendants object to the Magistrate Judge's findings, repeating their arguments above regarding the lack of protected First Amendment conduct by Mr. Doe.  They also argue that Mr. Doe cannot show that the criminal proceedings terminated in his favor, as he pled guilty to a misdemeanor charge of child abuse, thus "conced[ing] there was probable cause."

The Court dispenses with the Sheriff's Defendants objections as to Mr. Doe's protected conduct for the reasons previously explained.  As to the argument that the criminal proceeding did not fully resolve in Mr. Doe's favor, Mr. Doe contended that his claim was for "retaliatory prosecution" based on the exercise of his First Amendment rights, not "malicious prosecution."  The former, he argues dispenses with the "obligation that the underlying criminal action be terminated entirely in his favor."  This is correct.  *Mata v. Anderson*, 635 F.3d 1250, 1253 (10th Cir. 2011).  All that is necessary is that the charge not be supported by probable cause.  *Hartman v. Moore*, 547 U.S. 250, 260-61 (2006).  Mr. Doe has adequately alleged the absence of probable cause.  Thus, the Court finds that Mr. Doe has adequately pled this claim.

Once again, however, it becomes necessary to identify which of the many Defendants against whom this claim is pled are proper parties.  The Third Amended Complaint makes clear

that Detective Mihalko "completed a felony filing packet" against Mr. Doe despite knowing that

Mr. Doe had not been served with or notified of the custody order he allegedly violated, and

thus, he is a proper Defendant.  In addition, the Third Amended Complaint alleges that

Defendants Stevenson, on behalf of the District Attorney, directed Defendant Haynes "to open a

felony investigation and file for an arrest warrant."  The Third Amended Complaint alleges that

Mr. Haynes "was aware that [Mr. Doe] did not know about the custody order" he alleged

violated, but says nothing about Mr. Stevenson's knowledge.  These allegations are sufficient to

allege a retaliatory prosecution claim against Mr. Haynes, but not Mr. Stevenson, for whom there

is no evidence that he was aware that the felony charges lacked any probable cause.  Thus, Claim

Twelve survives, but only as against Defendants Mihalko and Haynes.

### 9. Remaining matters

To the extent not specifically addressed herein, the Court has reviewed the parties'

remaining arguments and finds them to be without merit.

### CONCLUSION

For the foregoing reasons, the Court **SUSTAINS IN PART** and **OVERRULES IN**

**PART** the DHS/Sheriff/DA Defendants' and Board's Objections **(# 76)** and the Plaintiffs'

Objections **(#79)**, and **SUSTAINS** the Monument Defendants' Objections **(# 78)** Objections.

The Monument Defendants' Motion to Dismiss **(# 52)** is **GRANTED**, and all claims asserted

against these Defendants are **DISMISSED**.  The DHS/Sheriff/DA Defendants and Board's

Motion to Dismiss **(# 59)** is **GRANTED IN PART** and **DENIED IN PART** as follows: all

claims against these Defendants are **DISMISSED** except: (i) Claims Four and Five (First

Amendment Retaliation) by Plaintiffs John and Jane Doe against Defendants McAfee, Little,

Harris, and Price; (ii) Claims Seven and Eight (Substantive Due Process) by Plaintiffs John and

Jane Doe and E.C, E.S.C., and J.C., against Defendants McAfee, Harris, Price, and Little only;

(iii) Claim Nine (Fourth Amendment) by Plaintiffs E.C., E.S.C., and J.C., against Defendant

McAfee only; and (iv) Claim Twelve (Retaliatory Prosecution) by Plaintiff John Doe against

Defendants Mihalko and Haynes only.  The caption of this action is amended to read as follows:

JOHN DOE;
JANE DOE;
E.C., by her parents and next friends;
E.S.C., by his parents and next friends; and
J.C., by his parents and next friends,

     Plaintiffs,

v.

JOANNA MCAFEE,
LISA LITTLE,
JOEY HARRIS,
JON PRICE,
MITCHELL MIHALKO, and
CHAD HAYNES,

     Defendants.

Dated this 29th day of September, 2014.

**BY THE COURT:**

_____

Marcia S. Krieger
Chief United States District Judge